IN the MATTER OF DISCIPLINARY PROCEEDINGS AGAINST
Terrence J. WOODS, Attorney at Law.

Supreme Court

*No. 98–0933–D. Filed September 15, 1998.*

(Also reported in 583 N.W.2d 650.)

¶ 1. PER CURIAM. We review the recommendation of the referee that the license of Attorney Terrence J. Woods to practice law be suspended for 90 days as discipline for professional misconduct, that suspension to run concurrently with the 60-day license

suspension the court imposed on Attorney Woods in a prior disciplinary proceeding. Because that period of suspension already has expired and Attorney Woods' license has been reinstated, a concurrent license suspension for the misconduct established in the instant proceeding no longer is feasible. Consequently, the license suspension we impose for that misconduct is prospective. In the course of this proceeding, Attorney Woods and the Board of Attorneys Professional Responsibility (Board) entered into a stipulation agreeing, in part, to a 90-day license suspension consecutive to the prior 60-day suspension or, if the court's disposition of this proceeding occurred after the expiration of the earlier suspension, to a prospective 90-day suspension.

¶ 2. We determine that Attorney Woods' misconduct established in this proceeding, which consisted of his failure to provide adequate representation to a client in an employment matter, investigate facts related to that client's claim and file a complaint or take other steps to further that client's interests and respond to his reasonable requests for information concerning the matter, warrants a 60-day suspension of Attorney Woods' license to practice law. That is the minimum period for which we impose a license suspension as discipline for professional misconduct.

¶ 3. Attorney Woods has been disciplined for professional misconduct on three prior occasions. In March of 1993 he consented to a public reprimand from the Board for failing to pursue properly the representation of two clients in criminal matters, including his failure to file a notice of intent to seek postconviction relief or otherwise pursue an appeal and not responding to numerous requests for information from the client and from the State Public Defender, who had

231

appointed him to those matters. In January, 1996, he consented to a private reprimand from the Board for having agreed to a settlement of a client's case on the record without first having discussed the proposed settlement terms with the client and obtaining her consent to accept them, as well as for failing to provide that client information in the matter and return documents and property to her.

¶ 4. Most recently, the court suspended Attorney Woods' license to practice law for 60 days, commencing April 7, 1998, as discipline for failure to keep a client reasonably informed of the status of a matter and promptly comply with reasonable requests for information from that client and surrender property to which the client was entitled, failing to act with reasonable diligence and comply promptly with a client's requests for information in another matter and initially not cooperating with the Board's investigation and making a misrepresentation in a disclosure to the Board, and failing to act with reasonable diligence on another client's behalf and cooperate with the Board's investigation in that matter. *Disciplinary Proceedings Against Woods*, 216 Wis. 2d 137, 573 N.W.2d 838 (1998).

¶ 5. Attorney Woods was admitted to practice law in Wisconsin in 1965 and practices in Oconto Falls. In the instant proceeding, he consented to the entry of a default judgment on the Board's complaint, and the referee, the Hon. Timothy L. Vocke, reserve judge, made findings of fact and conclusions of law accordingly.

¶ 6. Attorney Woods was retained by a client in December, 1994 to represent him in disputes with his current employer and a former employer that arose from his National Guard unit's having been called into

active service. At their initial conference, the client and Attorney Woods discussed the possible application of the Uniform Services Employment and Reemployment Rights Act to those disputes. There was no retainer agreement, Attorney Woods never billed the client, and the client never paid him a fee.

¶ 7. Starting in the spring of 1995, the client made frequent attempts to contact Attorney Woods to learn the status of his matters but, except for one occasion when Mr. Woods personally answered the office telephone, was never able to reach him. During that one contact, Attorney Woods told the client that he had written to the former employer and was waiting for a reply.

¶ 8. In the fall of 1995, after hearing nothing further from Attorney Woods, the client decided to negotiate with his current employer himself regarding restoration of his seniority. In November, 1995, the employer made a settlement offer giving him additional seniority and vacation time in exchange for his discontinuing all claims against the employer. When the client conferred with him about the offer, Attorney Woods told him not to accept it, as they could do better in court. After the client rejected the settlement offer, the employer terminated his employment, ostensibly for reasons unrelated to the rejected settlement offer. The Veterans Employment and Training Service notified the client in December, 1995, that it had not received any information from him to alter its initial determination of his ineligibility for coverage under USERRA in respect to his most recent employer and, as it had been contacted by someone from Attorney Woods' office, who was identified only by her first name, it would no longer handle the case because the client had elected to retain private legal counsel.

¶ 9. The client telephoned Attorney Woods' office five times in the second half of January, 1996 to obtain papers in his files that would show entitlement to USERRA benefits, but he received no papers from Attorney Woods. He renewed his efforts in May, 1996 and in late August went personally to Attorney Woods' office and obtained all of his papers. Among them was a draft of a complaint stating a claim under USERRA against the most recent employer. Attorney Woods told the client that he had intended to file that complaint soon. Three weeks later Attorney Woods assured the client he would file the complaint immediately and would "fight to the hilt." As of February 7, 1997, when the client filed a grievance with the Board, Attorney Woods had filed nothing on the client's behalf.

¶ 10. Attorney Woods' entire file in the client's matter disclosed no evidence that he or anyone in his office other than the person who made the single contact with the Veterans Employment and Training Service ever had attempted to contact anyone regarding the client's case, and there was no evidence that any correspondence was generated from the office during the entire course of the representation. In addition, there was no evidence that Attorney Woods ever requested the client to pay a filing fee, and the client asserted that he never did.

¶ 11. The referee concluded, as the Board had alleged, that Attorney Woods failed to promptly comply with this client's reasonable requests for information and provide his client information and a reasoned analysis concerning the settlement offer from his employer, in violation of SCR 20:1.4(a) and (b).[1] The referee con-

---

[1] SCR 20:1.4 provides:

**Communication**

cluded further that Attorney Woods failed to act with reasonable diligence in representing the client, in violation of SCR 20:1.3,[2] as demonstrated by his failure to investigate the facts of the client's claims from the time of his retention in December, 1994 up to the filing of the Board's grievance in February, 1997 and to file the complaint he had drafted or take other steps to further the client's interests.

¶ 12. In determining the discipline to recommend for that professional misconduct, the referee, who had served as referee in the immediately prior proceeding against Attorney Woods, considered in mitigation of its seriousness that there was no apparent dishonest or selfish motive on Attorney Woods' part and that he neither requested nor received any payment from the client. In aggravation of that misconduct, the referee took into account Attorney Woods' prior discipline, the fact that the two reprimands had been imposed in a relatively short period of time, and that in the instant matter Attorney Woods engaged in multiple acts of misconduct. Noting the similarity between the misconduct in the instant proceeding and that in the immediately prior proceeding, the referee observed a pattern to Attorney Woods' misconduct, namely, when contacted by clients, he led them to believe he would represent them but then

(a) A lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.

(b) A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation.

[2] SCR 20:1.3 provides:

**Diligence**
A lawyer shall act with reasonable diligence and promptness in representing a client.

235

failed to keep in contact with them and provide them any legal services.

¶ 13. Rejecting the consecutive 90-day license suspension to which the parties stipulated, the referee recommended a 90-day license suspension to run concurrently with the prior 60-day suspension that commenced April 7, 1998. In making that recommendation, the referee observed that had he considered the misconduct established in the instant proceeding together with the three matters he addressed in the prior proceeding, he would not have recommended what would have amounted to a 150-day suspension.

¶ 14. As indicated above, the concurrent license suspension recommended by the referee is no longer an option. Also, because Attorney Woods was reinstated to the practice of law following completion of the 60-day license suspension, we are not in a position to impose retroactively a suspension consecutive to the prior suspension. We determine, then, that the seriousness of Attorney Woods' misconduct established in this proceeding warrants a prospective 60-day license suspension.

¶ 15. IT IS ORDERED that the license of Terrence J. Woods to practice law in Wisconsin is suspended for a period of 60 days, effective October 26, 1998.

¶ 16. IT IS FURTHER ORDERED that within 60 days of the date of this order, Terrence J. Woods pay to the Board of Attorneys Professional Responsibility the costs of this proceeding, provided that if the costs are not paid within the time specified and absent a showing to this court of his inability to pay the costs within that time, the license of Terrence J. Woods to practice law in Wisconsin shall remain suspended until further order of the court.

¶ 17. IT IS FURTHER ORDERED that Terrence J. Woods comply with the provisions of SCR 22.26 concerning the duties of a person whose license to practice law in Wisconsin has been suspended.

¶ 18. DAVID T. PROSSER, J., did not participate.